UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARA E. DECK,

    Plaintiff,

v.

COMMISSIONER of the Social Security
Administration,

    Defendant.

16-CV-344
DECISION AND ORDER

---

On May 2, 2016, the plaintiff, Sarah E. Deck, brought this action under the Social Security Act (the "Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. *Id.* On October 26, 2016, Deck moved for judgment on the pleadings, Docket Item 9, and on March 10, 2017, the Commissioner responded and cross moved for judgment on the pleadings, Docket Item 12.

For the reasons stated below, this Court finds that the Commissioner did not apply the correct legal principles in making his decision. Accordingly, that decision is vacated, and this claim is remanded for further administrative proceedings consistent with this decision.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On August 11, 2012, Deck applied for Title II disability insurance benefits. Tr. 81. She claimed that she had been disabled since October 12, 2009, due to neck, back, and shoulder injuries, as well as several other ailments. Tr. 81. On October 30, 2012,

Deck received notice that her application was denied. Tr. 25. She requested a hearing before an administrative law judge ("ALJ"), which was held on March 24, 2014. Tr. 25. The ALJ then issued a decision on September 4, 2014, concluding that Deck was not disabled. Tr. 25-39. Deck requested review of the ALJ's decision, but the Appeals Council denied her request, and the ALJ's decision became final.[1] Tr. 1-3. Deck then sought review in this Court.

## II.   RELEVANT MEDICAL EVIDENCE

Deck's physical ailments began on October 12, 2009, when she was involved in a motor vehicle accident. Tr. 52. Because of injuries sustained in the accident, Deck suffered from pains in her left shoulder, cervical spine, and lumbar spine, and she suffered from other minor ailments as well. *Id.* at 54-59

### A.   Deck's Left Shoulder, Neck, and Back Pain

After she was treated in the emergency room following her accident, Deck saw Christopher Mutty, M.D., an orthopedic surgeon, who diagnosed a rotator cuff injury and a Class II joint separation in her left shoulder. Tr. 53, 231. Dr. Mutty recommended that she "remain nonweightbearing on [her] left upper extremity" and that she should "remain out of work [for] . . . two weeks." Tr. 231.

---

[1] Deck filed a new application for benefits soon after the final decision of the Social Security Administration ("SSA"), and on October 15, 2018, an ALJ determined that she was disabled as of September 5, 2014. Docket Item 14.

Later, Deck began seeing Edward D. Simmons, M.D., another orthopedic surgeon, for treatment of her shoulder, cervical spine,[2] and lumbar spine.[3] Tr. 248. Dr. Simmons's three-level lumbar discogram[4] revealed annular tears at L3-L4, L4-L5, and L5-S1; a small disc herniation at L4-L5; and a moderately large left disc herniation at L5-S1. Tr. 53-54, 271-75. Deck continued to see Dr. Simmons through July 27, 2011. Tr. 245-46, 359-83. During a twenty-month period, Dr. Simmons repeatedly opined that Deck was physically incapable of working. Tr. 248-49, 363, 366, 371, 374, 377, 381.

On March 23, 2010, during the period she was being seen by Dr. Simmons, Daniel Wild, M.D., another orthopedic surgeon, performed an independent medical examination on Deck. Tr. 263-269. He concluded that Deck "has a disability and she is unable to perform her normal work as a speech pathologist." Tr. 268.

During this same time period, Deck saw A. Marc Tetro, M.D., a specialist in hand, shoulder, and elbow surgery. Tr. 306-21. Dr. Tetro gave Deck two injections in her left shoulder, Tr. 292-96, but when they did not relieve Deck's pain, Dr. Tetro recommended surgery. On April 4, 2011, Kevin J. Gibbons, M.D., a neurosurgeon, also recommended surgery. Tr. 56, 424-27.

---

[2] The cervical spine is the area of the vertebral column commonly referred to as the neck. See https://medlineplus.gov/ency/article/007351.htm.

[3] The lumbar spine refers to the lower back. See https://medlineplus.gov/ency/article/007350.htm.

[4] A discogram is a "procedure [that] involves the injection of a contrast dye into a spinal disc thought to be causing low back pain. The fluid's pressure in the disc will reproduce the person's symptoms if the disc is the cause. The dye helps to show the damaged areas on CT scans taken following the injection." https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Low-Back-Pain-Fact-Sheet

On May 31, 2011, Dr. Gibbons performed surgery—a "three level fusion and discectomy"[5]—on Deck. Tr. 55. Dr. Gibbons "took out three discs, put in three cadaver bones, a rod and eight screws." Tr. 55. After surgery, both Dr. Gibbons and Dr. Tetro opined several times that Deck was disabled and could not physically perform her work. Tr. 308, 313, 318, 363, 366, 371, 374, 377, 381. Moreover, Dr. Gibbons's office recommended that Deck avoid "any pushing, pulling, or lifting anything greater than 5-10 pounds." Tr. 443. In addition, Deck's post-therapy physical therapist, Janet Finley, listed the following functional limitations: "performance in leisure activities, performance in work activities, limitations in community activities, and limitations in home management." Tr. 456. In contrast, consultative examiner Donna Miller, D.O., examined Deck only once and concluded that Deck had only a "moderate limitation for heavy lifting, bending and carrying." Tr. 485.

Deck herself said that she was able to dress, drive, bathe, and prepare food daily. Tr. 183, 479. At her hearing, she said that she could do light shopping and cleaning but needed assistance doing the laundry. Tr. 61-62. And Deck said that she had to perform physical therapy exercises daily to loosen her back. Tr. 182.

### B. Deck's Other Ailments

During this same time period, Deck also suffered from left leg pain, migraine headaches, and psychiatric ailments. Julio Alvarez, M.D., began treating Deck on

---

[5] A "[s]pinal fusion is surgery to permanently join together two or more bones[(vertebrae)] in the spine so there is no movement between them." https://medlineplus.gov/ency/article/002968.htm. A discectomy is "surgery to remove all or part of the [disc] that helps support part of [a patient's] spinal column." https://medlineplus.gov/ency/article/007250.htm

4

March 19, 2013, for her left leg swelling. Tr. 524. On June 20, 2013, Dr. Alvarez diagnosed Deck with left leg iliac vein stenosis.[6] Tr. 26-27. After "stenting,"[7] the pain and swelling in her leg subsided. Tr. 528-29.

On May 9, 2011, Deck began treatment with Laszlo Mechtler, M.D., a neurologist, for her headaches. Tr. 391. On January 20, 2012, Dr. Mechtler diagnosed Deck with migraines and cervicalgia.[8] Tr. 388-89. On November 22, 2013, Mechtler also opined that Deck suffered from neuropathy.[9] Tr. 542-44.

Finally, on September 28, 2012, Thomas Ryan, PhD, a psychologist, conducted a "Psychiatric Consultative Examination." Tr. 477-80.[10] Dr. Ryan diagnosed depressed mood and trouble concentrating. Tr. 479-80.

## III. THE ALJ'S DECISION

To assess a claimant's social security application, an ALJ must evaluate the claim under the SSA's five-step evaluation process for disability determinations. *See* 20

---

[6] Vein stenosis involves the constriction of the vein. *See stenosis*, AM. JUR., PROOF OF FACTS: ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY at S65 (3d ed. 2002) [hereinafter AM. JUR.].

[7] A "stent" is "[a] device . . . used in a blood vessel . . . after correction of a blockage." *See stent*, AM. JUR., *supra* at S66. "Stenting" is "[t]he introduction of a stent into a body structure" such as a vein. *Id.*

[8] "Cervicalgia" simply another name for neck pain. *See* https://medlineplus.gov/ency/patientinstructions/000802.htm.

[9] Neuropathy is "[a]ny disease of the nerves, including cerebral (central) and spinal (peripheral)." *See neuropathy*, AM. JUR., *supra* at N34.

[10] In the memorandum in support of her motion for judgment on the pleadings, Deck says that she underwent the psychiatric examination at the request of SSA. Docket Item 9-1 at 17.

5

C.F.R. § 404.1520. At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ decides whether the claimant is suffering from any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled.

At step three, the ALJ determines whether any severe impairments meet or equal an impairment listed in SSA's regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has a severe impairment or impairments that meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment meets one listed, the ALJ proceeds to step four. *Id.*

As part of step four, the ALJ determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. When determining a plaintiff's RFC for claims filed before March, 27, 2017,[11] the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

---

[11] SSA regulations differ based on whether a claim was filed before or after March 27, 2017. *See, e.g.,* 20 C.F.R § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"). In 2017, SSA issued new regulations revising its rules about acceptable medical sources and how it considers and addresses medical opinions and medical evidence generally. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan 18, 2017). Among other things, the regulations "no longer give specific weight to medical opinions and prior administrative medical findings; this includes giving controlling weight to medical opinions from treating sources." Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,573 (Sept. 9, 2016). "Instead, [SSA will]

After determining the claimant's RFC, the ALJ completes step four. If a claimant can perform past relevant work, the claimant is not disabled and the analysis ends. But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Deck was not currently engaged in "substantial gainful activity." Tr. 26. At step two, the ALJ found that Deck had the following severe impairments: "cervical spine disc herniation status post discectomy and fusion, lumbar spine disc bulge/protrusion, left shoulder rotator cuff tendonitis and acromioclavicular joint separation, left leg venous insufficiency, and headaches." *Id.* At step three, the ALJ determined that these severe impairments did not medically equal the criteria of any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. 30.

In assessing Deck's RFC, the ALJ determined that Deck could perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a),[12] but cannot kneel; climb ladders, ropes,

---

consider the persuasiveness of medical opinions and prior administrative medical findings using" a variety of factors. *Id.* at 62,573-74.

[12] "Sedentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one [that] involves sitting, a certain amount of walking and standing is

7

or scaffolds; or perform overhead activities with her left upper extremity. Tr. 31. Additionally, the ALJ found that Deck could only occasionally perform postural activities; reach with her left upper extremities; sit longer than twenty minutes at a time; or stand longer than twenty minutes at a time. *Id.* Finally, the ALJ found that Deck should avoid cold temperatures, wetness, and humidity. *Id.*

The ALJ based these findings on the opinions of Deck's physicians and the other available medical evidence. Tr. 37. The ALJ did not give significant consideration to Deck's subjective complaints, concluding that they "may have been overstated." Tr. 36. Moreover, the ALJ arrived at his conclusion notwithstanding the treating sources' medical opinions because: (1) those doctors' statements that Deck was disabled were opinions regarding matters exclusively reserved for the Commissioner and therefore not to be given significant weight, and (2) each doctor failed to provide a function-by-function assessment of Deck's RFC. Tr. 37. Thus, Deck's treating source medical opinions were not necessarily inconsistent with the ALJ's findings that she still had the residual capacity to perform sedentary work. *See* Tr. 37. Although Dr. Miller was not a treating source and examined Deck only once, the ALJ gave her opinion significant weight because "she based her opinion on a thorough evaluation of the claimant and her opinion was consistent with her examination findings." *Id.* This was the only opinion afforded significant weight by the ALJ. *Id.*

At step 4, the ALJ determined that Deck can perform past relevant work as a speech language pathologist and faculty member. *Id.* Alternatively, at step 5, the ALJ

---

often necessary [to perform] job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met." 20 CFR § 404.1567(a).

8

concluded that Deck also can perform "jobs existing in significant numbers in the national economy." Tr. 38. Specifically, the ALJ determined Deck can work as the director of a speech and hearing clinic. *Id.*

Deck raises several objections to the ALJ's formulation of her RFC. First, Deck argues that the ALJ erred in not affording the opinions of Dr. Mutty, Dr. Tetro, and Dr. Simmons controlling weight under the treating physician rule. Docket Item 9-1 at 16. Deck also argues that the ALJ did not give the opinion of Dr. Wild proper weight. *Id.* at 17-18. Finally, Deck argues that in formulating her RFC, the ALJ improperly discounted the credibility of her subjective complaints. *Id.* at 21-25.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [SSA] applied the correct legal principles in making the determination." *Id.* This includes ensuring that the court is "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Id.* at 986. "Substantial evidence" means "more than a mere scintilla. It

9

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## **DISCUSSION**

### I. TREATING PHYSICIAN RULE AND DUTY TO DEVELOP THE RECORD

#### A. Treating Physician Rule Generally

Under SSA regulations,[13] a "treating source" is a claimant's "own acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing [medical] treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). A treating physician's opinion is given controlling weight so long as: (1) it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* § 404.1527(c)(2). When a treating physician provides an opinion on an issue that is "reserved to the Commissioner," however, it is not given controlling weight or special significance. *Id.* § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2. Examples of opinions reserved for the Commissioner are: (1) "[w]hether an individual's RFC prevents him or her from doing past relevant work," (2) and "[w]hether an individual is 'disabled' under the Act." SSR 96-5p, 1996 WL 374183, at *2.

---

[13] "For claims filed . . . before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." 20 C.F.R. § 404.1527.

10

Here, Dr. Mutty, Dr. Tetro, Dr. Gibbons, and Dr. Simmons all qualify as treating sources under § 404.1527(a)(2) because Deck saw each doctor for treatment several times over the relevant period.

Deck argues principally that the ALJ's opinion does not give controlling weight to the plaintiff's treating sources. Docket Item 9-1 at 15-20. She focuses on the ALJ's statement in his decision that:

> The undersigned has considered the opinions of the physicians throughout the record, discussed in detail above, indicating that the claimant is disabled or unable to work. However, no significant weight may be given to a treating or other medical source opinion that the claimant is disabled because this is the ultimate issue to be decided, which is reserved to the Commissioner. (SR-96-5p).

*Id.* at 18 (quoting Tr. 37). Deck characterizes the statement—and a series of short paragraphs in the ALJ's decision describing the opinions of Deck's treating physicians that she was incapable of working or physically disabled, Tr. 36—as rejecting the opinions of treating physicians solely because they use terms reserved for opinions by the Commissioner. Docket Item 9-1 at 18.

The ALJ's decision in Deck's case could certainly have been written in a manner that more effectively promotes judicial review. Nevertheless, "a searching review of the record" assures this Court that Deck "received the rule's procedural advantages." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

For example, Dr. Tetro concluded that Deck was disabled, basing his conclusion on his assessment of Deck's left shoulder injuries and limited range of movement. Tr. 281-282, 294-296. Although the ALJ did not accept Dr. Tetro's ultimate conclusion that Deck was disabled, Tr. 36, he did credit Dr. Tetro's conclusions regarding her left shoulder injuries, Tr. 33. Likewise, Dr. Simmons concluded that Deck was disabled

11

from work, Tr. 36 (citing Tr. 363, 366, 368, 371, 374, 377, and 381), basing that conclusion on Deck's cervical and spinal injuries, Tr. 363, 366, 371, 377, 380. Although the ALJ did not accept as conclusive Dr. Simmons's determination that Deck was disabled, Tr. 36, he did credit Dr. Simmons's findings on her cervical and lumbar spinal injuries, Tr. 33-34.

In sum, ALJ's determination that Deck has the residual function capacity to perform sedentary work under the Social Security Act was not based on a failure to give the medical opinions of her treating sources controlling weight. Instead, it was based on his determination that Deck maintained a capacity to do some work regardless of her physical injuries. Tr. 36-37. Stated another way, the ALJ rejected the ultimate conclusions of the treating sources, but he accepted their findings. And that is not an analytical error.

### B. DUTY TO DEVELOP THE RECORD

Nevertheless, the ALJ failed to apply the correct legal principles in his decision because he failed to recontact Deck's treating sources regarding what he believed to be inadequacies in their medical opinions. *See* Tr. 37. The Social Security Act provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, if necessary in order to properly make such a determination, prior to evaluating medical evidence obtained from another source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the

12

essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion in the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96-5p, 1996 WL 374183, at *6.

Here, the ALJ stated that he did not give weight to any of Deck's treating physicians because they failed to "provide[] a function-by-function assessment of the claimant's residual functional capacity," Tr. 37, apparently referring to the opinions of Dr. Mutty, Dr. Wild, Dr. Tetro, and Dr. Simmons. Tr. 36-37. But if the ALJ needed such an assessment to appreciate the conclusions of the treating physicians, then he should have recontacted those treating physicians to inquire whether they could provide that information. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record"); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sue sponte*"); *Hall v. Astrue*, 677 F. Supp. 2d 617, 626 (W.D.N.Y. Dec. 20, 1996) ("An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion 'contains a conflict or ambiguity that must be resolved.'") (*quoting Stevens v. Comm'r of Soc. Sec'y Admin.*, 2008 WL 5057029, *5 (N.D.N.Y. Nov. 24, 2008)). In other words, the ALJ should not have

13

discounted treating physicians' opinions that Deck was disabled or unable to work without inquiring about why they held those opinions and requesting the "function-by-function assessment" that he believed was lacking. *See Masher v. Astrue*, 354 F. App'x 623, 628 (3d Cir. 2009) ("[t]he mere utterance of the word 'disabled' does not make a physician's opinion 'conclusory.' . . . Rather than focusing on the doctor's choice of words, the ALJ was obligated to examine the substantive evidence on which the physician's conclusion was based"). There is no indication that the ALJ made any such effort here. For that reason, the case is remanded to allow the ALJ to develop the record as needed and then reweigh the evidence.[14]

## II. PLAINTIFF'S CREDIBILITY

Finally, Deck argues that the ALJ improperly discounted her credibility in formulating her RFC. Docket Item 9-1 at 21-24. "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence on the record." *Watson v. Berryhill*, 732 F. App'x 48,

---

[14] The record also includes an opinion from Dr. Janet Finley, a treating physical therapist, that Deck has functional limitations on "performance in leisure activities, performance in work activities, limitations in community activities, and limitations in home management," Tr. 456, yet her opinions do not appear to have been considered by the ALJ at all. The ALJ must also weigh her opinions and develop their basis further as needed so that he can compare those findings with Dr. Miller's function-by-function assessment. 20 C.F.R. § 404.1527(f); *see also Gibson v. Commissioner of Social Security*, 2018 WL 3727343, at *15 (E.D.N.Y Aug. 3, 2018) (quoting 20 C.F.R. § 404.927(f)) ("ALJs should consider the same factors used for evaluated opinions from accepted medical sources [when considering opinions from other sources] and 'generally should explain the weight given to opinions from these sources' or otherwise ensure the ALJ's reasoning can be discerned.")

14

51-52 (2d Cir. 2018) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Courts "defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence." *Id.* at 52 (quoting *Aponte v. Sec'y, Dep't of HHS*, 728 F.2d 588, 591 (2d Cir. 1984).

ALJs follow a two-step process in assessing the credibility of an individual's statements. *Genier*, 606 F.3d at 49; 20 C.F.R. § 404.1529; SSR 96-7P, 1996 WL 374186, at *2. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). If so, "at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). "Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Watson*, 732 F. App'x at 52 (quoting SSR 96-7p, 1996 WL 374186, at *2).

Here, the ALJ found that Deck's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 35. But at step two, the ALJ found that Deck's statements about the intensity, persistence, and limiting effects of her symptoms were only partly credible because (1) Deck was well enough to travel to Europe for a cruise in 2012, and (2) her "daily activities [were] not limited to the extent one would expect." *Id.* at 35-37. To support his conclusion that Deck's daily activities

15

were not as limited as one would expect, the ALJ citied Deck's submissions that her injuries did not affect (1) her ability to dress and undress "using modifications," (2) her ability to bathe, (3) her ability to feed herself, (4) her ability to use the toilet, (5) her ability to "prepare simple less time consuming" meals with reduced standing time each day, (6) her ability to drive, and (7) her ability to shop in stores for groceries. *Id.* (citing Tr. 182-83, 185). He also cited Dr. Ryan's conclusions that, among other activities, Deck is able to dress, bathe, and groom herself, as well as Dr. Miller's conclusions that Deck cooks three times a week, does light cleaning and laundry with assistance, does light shopping, and showers and dresses daily. *Id.* at 36 (citing Tr. 479, 482). The ALJ nevertheless recognized that Deck "may experience some degree of pain and discomfort." *Id.*

In light of other evidence on the record, this Court might well reach a different conclusion if it were reviewing this matter de novo.[15] But "[i]t is the function of the [ALJ], not the reviewing courts, to resolve evidentiary conflicts and the appraise the credibility of witnesses, including the claimant." *Aponte*, 728 F.2d at 591 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). The ALJ's conclusion that Deck's complaints were only partly credible is supported by the substantial evidence that he ALJ cited in his opinion and discussed above.

---

[15] Deck testified before the ALJ regarding the extensive measure that she undertook to be able to travel with her ailments. To fly to Europe, she paid for a seat with extra room and took pain medication she did not ordinarily take. Tr. 67. During her cruise, she often had to miss recreational activity to return to her cabin and lie down due to pain. *Id.* Likewise, in her function report, Deck explained the measures that she must take to perform her daily activities. According to her report, every morning, Deck does physical therapy exercises to partially relieve her back pain. Tr. 182. Even so, she said that she can do only the most basic of activities. Tr. 183, 479. For example, she cannot even do the laundry without assistance. Tr. 61-62.

16

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Deck's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: November 21, 2018
         Buffalo, New York

    *s/ Lawrence J. Vilardo*
    LAWRENCE J. VILARDO
    UNITED STATES DISTRICT JUDGE